No. 21,826.

MICHAEL FRANKOVITCH AND ANNA FRANKOVITCH, *Appellees,* v. ALBERT C. WEIGANT, *Appellant.*

SYLLABUS BY THE COURT.

DEED—*Contract—Option to Repurchase—Option Not Exercised.* The instruments executed by the plaintiffs examined, and held clearly to evidence a deed with an option to purchase back within a year—which option was not exercised.

Appeal from Doniphan district court; WILLIAM I. STUART, judge. Opinion filed January 11, 1919. Reversed.

*J. J. Baker,* of Troy, for the appellant.

*A. Bowers,* of St. Joseph, Mo., for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiff sued to have a certain deed declared a mortgage, and for an accounting by the grantee. The defendant admitted the execution of the deed and the accompany-

Frankovich v. Weigant.

ing contract, and alleged that he had purchased the land sub-
ject to two mortgages, one of which he had paid off, and had
paid the interest on the other, and also subject to taxes on the
land and money for certain improvements thereon, and further
alleged that when the deed was executed the plaintiffs owed
him certain sums which were canceled by the conveyance. The
deed covering about 38 acres of land recited a consideration of
$5,000, and warranted the title in the grantors, except mort-
gages for $2,650 and $1,500, "which grantee assumes as part
of purchase price." There was also a contract executed and
acknowledged by the plaintiffs, which recited that the latter
had sold and conveyed by warranty deed the land in question,
and that the consideration was the assumption of the two mort-
gages already referred to, and the cancellation of certain in-
debtedness owed to the grantee, after which came the follow-
ing:

"Therefore as a separate and subsequent agreement this option to pur-
chase is given and contract made and it is agreed that first party will sell
and convey to either Anna Frankovich or Michael Frankovich the land
above described and they are given the option to purchase the same at
any time within one year from date hereof by paying the first party, his
heirs or assigns, a sum equal to the full amounts paid for said land by
first party as aforesaid, together with all other money expended by him
on said land hereafter, including taxes, improvements, interest on any
mortgage, indebtedness that may be paid, together with 8 per cent per
annum, interest on said sums and the assumption by second party or
either of them of any unpaid indebtedness on mortgages aforesaid of
record or any tax liens or indebtedness."

Also,

"It is also expressly understood between the parties hereto that the
deed heretofore made and given by second parties hereto to first party,
was intended as an absolute conveyance in fee simple and in no wise as
security for debt."

The case was tried by the court. The issues were found in
favor of the plaintiffs, and the defendant was adjudged to be
indebted to them in the sum of $1,000. The defendant appeals,
and insists that the deed was not a mortgage, and that, in any
event, the judgment against him is excessive.

Counsel have presented able and admirable arguments and
briefs in support of their contentions. We regard the transac-
tion between the parties as one in which the plaintiffs conveyed
the land to the defendant in satisfaction of what they owed

him, he to pay the existing mortgages on the land, with the privilege on the part of the plaintiffs to repurchase the land within the time and on the terms fixed by the accompanying contract. (*McNamara v. Culver*, 22 Kan. 661; *Yost v. Bank*, 66 Kan. 605, 72 Pac. 209; *Martin v. Allen*, 67 Kan. 758, 74 Pac. 249; *Root v. Wear*, 98 Kan. 234, 157 Pac. 1181.)

The defendant testified that he was to hold the land for a certain length of time, so that if they wanted to redeem it they could, but that Mrs. Frankovich told him to trade it or sell it, that she would never move back to Wathena, and to do whatever he liked with the place; and that he traded it. Mr. Dubach, a friend of the plaintiffs' who seems to have had much to do with the arrangement between the parties, testified that before the end of the first year he saw the defendant, who told him that he had collected the rent and applied it to his claim and the payment of the interest on the mortgage; that he, Dubach, told the defendant that the plaintiffs wanted the time extended for another year, and that if the defendant did not want to do that the witness would pay him his money and let him convey the land back to the plaintiffs, and the witness would make his arrangements with them to secure the money; that the defendant said he thought he would have a sale for the land about the first of March, and would rather leave it as it was, as he did not have the exact amounts figured up; and that he again saw the defendant about a settlement, and was asked by him, if he, Dubach, was willing to take the place for the Frankovichs and pay him his money, but that they did not come to any agreement.

Mrs. Frankovich testified that the defendant said if she would deed the land to him she could buy it back inside of a year; that she did not take any interest in the contract in which he agreed to sell them back the land; that after more than a year the defendant talked to her about trading the land for a restaurant, but she told him Mr. Dubach would look after it; that when she was talking to him about giving him a deed to secure him, she told him to try to sell the place, "that we didn't want it"; that after the deed had been made some time, she told him to sell the place, and he said he would do his best to sell it; and that she knew she had to exercise her option within a year, but did not make any offer to do so within that

Frankovich v. Weigant.

time. She testified that shortly after the deed was made the defendant mailed her something which she threw in the fire, and she did not know whether it contained the notes she had given him or not; and when asked why she thought the package was the notes, she said, "I just thought it was those notes."

The defendant testified that he traded the land for some St. Joseph property, and something like $1,600 to boot; that he took the property at $600; and that his grantee paid one mortgage, and he, the defendant, paid the other, which was for $1,500.

Mr. Dubach testified that the landlord's share of the fruit from the tenant on the farm for 1915 and 1916 should have been from $800 to $900. The defendant claimed to have received $150 or $175 the first year, but kept no record the second year. There was testimony that the land was worth $6,000, although the defendant claimed it was only worth about $125 an acre.

There is nothing in all the testimony, except a slipshod course of dealing, to indicate that the Frankovich's had any purpose or desire to purchase back the land within a year, and they seem to have taken very little interest in the affair after the conveyance was made. The package which evidently contained the notes owing by them to the defendants was burned. It does appear that Mr. Dubach wanted to save something for them, and that the defendant for some time talked as if he might, if they should make a settlement or he should make a sale, allow them something. But the land was his, and their legal right to buy back was not exercised within the time covered by the contract. Their indebtedness had been paid, the mortgages on the land had been taken care of, and it is difficult to see on what theory they can hold the defendant liable for any profit he may have made on the land after holding it something like two years.

The deed and the contract clearly evidence the contract on which the minds of the parties met, and nothing occurred subsequently to destroy its binding force. (*Elston v. Chamberlain,* 41 Kan. 354, 21 Pac. 259.)

The judgment is reversed, and the cause is remanded with directions to enter judgment for the defendant.